Filed 6/17/15

## CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059713 |
| v. | (Super.Ct.No. RIF1105882) |
| ARTURO MENDEZ NORIEGA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry E. Johnson, Judge. (Retired judge of the Los Angles Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]  Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B, D, E, F and G.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Kristine Gutierrez and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Arturo Mendez Noriega raped and sodomized his girlfriend's stepdaughter, Jane Doe, from 2003 until 2010. Defendant was convicted of nine counts of aggravated sexual assault of a child by means of rape.[1] (Pen. Code, § 269, subd. (a)(1)).[2] Defendant was sentenced to consecutive 15-years-to-life sentences on each count for a total state prison sentence of 135 years to life. He was ordered to pay a $10,000 restitution fine within the meaning of section 1202.4, subdivision (b)(1), and a stayed parole revocation fine in the same amount was also imposed pursuant to section 1202.45.

Defendant now claims on appeal as follows: (1) Doe's direct testimony should have been stricken in its entirety because defendant did not have a meaningful opportunity to cross-examine her, which violated his federal constitutional due process and confrontation rights; (2) the trial court erred by failing to sua sponte instruct the jury with the lesser included offense of unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (c)) for all counts; (3) a statement made by Doe's sister, who also was molested by defendant, that defendant was just sitting in court and saying nothing when

---

[1] Defendant was additionally charged with one count of violating section 288, subdivision (b)(1), but that was dismissed by the trial court when it granted defendant's section 1118.1 motion.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

2

he knew what he had done to her constituted *Griffin*[3] error in violation of his Fifth Amendment right to remain silent; (4) testimony by Doe's sister that she was also molested by defendant, admitted pursuant to Evidence Code section 1108, was improper propensity evidence; (5) admission of uncharged sexual offenses pursuant to Evidence Code section 1108 violated his federal constitutional rights of equal protection and due process right to a fair trial; (6) CALCRIM No. 1191, the standard instruction given to the jury when Evidence Code section 1108 evidence is admitted, erroneously interfered with the presumption of innocence and deprived him of a finding of guilt on proof beyond a reasonable doubt; (7) failure to instruct the jury regarding defendant's reasonable and honest belief in Doe's consent to the sexual acts as a defense to the charges constituted error; (8) the failure to instruct on consent deprived defendant of his federal constitutional rights to due process and a fair trial; (9) the prosecutor committed misconduct by making disparaging remarks about defendant; and (10) victim restitution fines are punitive and must be determined by the trier of fact rather than the trial court. We reject defendant's claims and affirm the judgment in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

A.     THE PEOPLE'S CASE-IN-CHIEF

1.     *DOE'S TESTIMONY*

Doe was born in June 1997, and was 16 years old at the time of trial. Doe considered defendant to be her stepfather even though he was not married to her mother,

---

[3]  *Griffin v. California* (1965) 380 U.S. 609, 612-613 (*Griffin*).

V.C. Defendant began living with Doe and her family in Mead Valley when she was very young. Her first memory of him was when she was four or five years old.[4] Doe had a little brother who also lived with them. Doe's older sister, K.A., lived with them for some time period when Doe was young.

Initially, Doe did not want to explain the details of what happened to her. She insisted she already told her story numerous times. Doe was angry because she wanted her mother back.[5] Doe was not the kind of person who "speaks up for herself" and did not want to fight to get defendant in jail when it would not bring her mother back. It was not fair that her mother was found guilty but defendant still had not been found guilty.

Eventually, Doe indicated that defendant molested her in the living room, her mother's bedroom and the bathroom of their house. Doe stated that defendant touched her vagina with his hand. Defendant touched her when she was "five, six, seven, eight, nine, 10, 11, 12, 13." These assaults occurred approximately two times each week. Defendant usually touched her during the night when just she and her little brother were home and her mother was at work. Doe slept in the living room when she was five years old. K.A. slept in the second bedroom.

The first time she could remember defendant having sex with her was when she was five years old. She was in the bathroom and K.A. was in her room. V.C. was not home. Doe used the bathroom. Defendant entered the bathroom and took her pants and

___

[4] Defendant was 56 years old at the time of trial.
[5] Doe's mother had pleaded guilty to child endangerment for her involvement in the case and had been deported to Mexico.

4

underwear off.  Defendant pulled down his own pants and underwear.  Defendant put his penis in Doe's vagina.

Doe did not call out for K.A. when this happened and did not fight because she was five years old and did not know what was happening to her.  Doe did not tell K.A. what happened to her because she was too young to know what was going on.  Doe did not want to tell her mom because it was "embarrassing."

Sometime when she was between the ages of seven and nine, she had blood in her underwear.  V.C. asked her about it.  She did not tell V.C. what defendant was doing to her.  Doe did not start her menstrual cycle until she was 12 years old.

Doe also indicated that defendant put his penis her anus.  It occurred in both his bedroom and the bathroom.  She was "Young" when this happened and it happened more than one time.  Doe would not say anything to him when this happened.  These sexual assaults would happen at night while her mom was at work.  He sodomized her at least twice each month.  Defendant only put his penis in her vagina and anus.

Defendant oftentimes took her and her little brother to school.  She would sit next to defendant in the front seat of his pickup truck.  Defendant would touch her vagina and breasts over her clothes while they were driving.  Doe's little brother would see defendant touch Doe; he knew that defendant was touching her inappropriately.  As she got older, she would try to move his hands away from her but he would try again.

Doe did not want to have sex with defendant.  He never hit her or forced her.  When defendant molested Doe, he told her that they were just playing.  When she was little she believed him.

5

Defendant never threatened her that if she told someone something bad was going to happen. She did not know why she had sex with defendant. Only once, when she was 11 or 12 years old, she cried. She cried because she was tired of being molested.

Doe indicated that the molestations stopped when she was 13 years old. She believed it was because V.C. was pregnant and stopped working nights. Also, before V.C. got pregnant, Doe started to stay at a friend's house after school because she did not want to go home.

Doe told her school counselor about the molestations on December 14, 2011. Doe finally told the counselor because V.C. gave birth to another baby, a girl, in July 2011. Doe "didn't want the same thing to happen" to her little sister. Doe told the counselor that she could not go home because V.C. would "beat the shit" out of her. Doe thought that V.C. would think she was lying and would beat her up for going to the counselor and wasting V.C.'s time. The counselor called the police. Doe was placed in a foster home.

V.C. asked Doe when she was in elementary school if she was being molested by defendant. Doe was afraid and told her no.

V.C. was going to take Doe to the doctor because of the blood in her underwear. V.C. and defendant drove Doe to a clinic about a week after the blood was found in her underwear. However, defendant and V.C. fought outside and they never went in. Doe could not hate defendant because he had been her dad as long as she was alive.

## 2.    V.C.'S TESTIMONY

V.C.[6] was afraid to testify because she did not want to receive additional jail time. V.C. recalled being summoned to Doe's school. When she arrived, police were at the school. V.C. was questioned about sexual abuse committed by defendant against Doe. V.C. suspected prior to that day that defendant may be molesting Doe. She had seen blood in Doe's underwear when Doe was 10 years old, which was prior to her getting her period. When V.C. asked Doe, she "blushed" like she was scared. V.C. did nothing. She did ask defendant one time if he was "doing something wrong at home" and he said no. Defendant always told her if there were ever any problems with the police, she would get deported.

On another occasion, V.C. found blood in the toilet. This also made her suspect that something may be going on between defendant and Doe. V.C. at some point stopped working nights in order to help protect the girls. K.A. told her one time that something had happened with defendant but K.A. never repeated it. V.C. was afraid to call the police. V.C. suspected the abuse for four years prior to Doe telling the school counselor.

## 3.    K.A.'S EVIDENCE CODE SECTION 1108 TESTIMONY

K.A. was born in October 1993, and was 20 years old on the day of trial. Defendant was not her father. K.A. recalled that defendant began living with V.C. and the children when K.A. was eight or nine years old.

---

[6] V.C.'s testimony from the preliminary hearing was read to the jury because she was an unavailable witness; she had been deported and could not be located in Mexico.

When K.A. was 11 years old, V.C. started working nights. When K.A. was 14 years old, K.A. was in the kitchen and defendant started touching her. He first hugged her and tried to kiss her. She backed away. He was able to kiss her cheek. K.A. went outside.

Later that same night, K.A. took a shower. Doe and her little brother were sleeping. After her shower, she put on her pajamas. As she walked back to her room, defendant came out of his bedroom. Defendant was wearing only boxers or shorts. Defendant grabbed K.A. by the arm and pulled her into his room. K.A. resisted but defendant threatened to report that V.C. was in the country illegally. Defendant threw K.A. on the bed and pulled down her pants. He put his penis in her vagina. K.A. felt awful and wanted to die. This happened a "couple" times.

K.A. eventually ran away from home when she was 15 years old; K.A. told V.C. that defendant tried to touch her but did not tell her they had sex. V.C. never did anything about it. K.A. never told anyone else.

On December 14, 2011, K.A. was contacted by the police while she was living at her boyfriend's house. The police came to her house that night. When asked if she had been molested by defendant, she responded only that he touched her over her clothes. She did not want to say, in front of her boyfriend, that she and defendant had sex. K.A. also did not say that she and defendant had sex when she later spoke with an investigator because V.C. was in custody and she did not want to make it worse for her.

The first time K.A. stated she and defendant had sex was at the trial. She had not told the prosecutor prior to her testimony at trial.

B.    DEFENSE

Ever Valentin lived with defendant from 1989 to 1997.  Valentin had four children.  The children lived in Mexico but spent some time with defendant.  Two of Valentin's children, including a girl, lived with defendant and her for two years.  The girl was 18 years old at the time.  Defendant never did anything sexually inappropriate toward her.  Valentin had never seen defendant be inappropriate with a minor girl.

Juan Carlos Zenteno met defendant at work and had known him for approximately 10 years.  Zenteno described defendant as being a kind, attentive and nice person.  Zenteno had four children, including a daughter.  Defendant never behaved inappropriately around them.  Defendant did not have a reputation for liking young children.

Riverside County Sheriff's Deputy Maurice Daugherty responded to the high school to investigate Doe's allegations of sexual abuse.  Doe told Deputy Daugherty that defendant started molesting her when she was six years old, not when she was five years of age.  She described the first time that defendant molested her; she had been sleeping on the living room couch.  She woke up and defendant was on top of her.  She described no sexual offenses that occurred in the bathroom.  She described the sexual offense as defendant putting his penis in her vagina.  She did not disclose any incidents of anal sex.

Doe was subjected to Riverside County Assessment Team (RCAT) interviews on December 15, 2011, and December 20, 2011.  Detective Thomas Salisbury observed both interviews.  Doe stated that defendant first had sex with her when she was six years old and the last time was when she was 12 years old.  Doe stated that the first time that he

9

had sex with her was on the living room couch. She described the incident as defendant putting his "dick" inside her vagina. Doe stated the sex always occurred on the living room couch. Defendant never said anything to her before having sex with her. She never described an incident in the bathroom. Doe never stated that defendant had anal sex with her.

Doe described four distinct times that defendant had sex with her: the two times when she was the ages of six and 12; one time when she was seven years old when the sex lasted the longest; and one time when she was nine years old, she saw his penis. Doe "estimated" that she was six years old when the first incident happened.

## DISCUSSION

### A.    MOTION TO STRIKE DOE'S TESTIMONY

Defendant contends that the trial court should have granted his motion to strike Doe's direct testimony because he was unable to conduct a meaningful cross-examination due to her refusal to respond to trial counsel's questions.

#### 1.    *ADDITIONAL FACTUAL BACKGROUND*

Prior to trial, the prosecutor informed the trial court that Doe was hostile toward her because Doe blamed the prosecutor for V.C. getting deported back to Mexico. At the beginning of Doe's testimony, a break was taken because Doe was crying. During the break, Doe was advised by the trial court that she had to testify. Doe asked what would happen if she walked out of court. She was told she would probably be arrested. Doe asked if she could answer the questions in another room where the jury would not be present. The trial court advised her that she had to testify in front of the jury and

10

defendant. The prosecutor then asked Doe if she was ready to resume testifying, and she responded "No." The prosecutor asked her, "Will there be a time today that you will be ready, or should I just go ahead." Doe responded, "No." Questioning resumed.

Thereafter, the prosecutor asked Doe to move her microphone closer to her mouth so everyone could hear her, and she responded, "I don't care." The prosecutor asked Doe why she was so angry; Doe responded that she already told the prosecutor what defendant had done to her. After another sidebar, the prosecutor asked Doe if she was going to answer the questions about the different rooms in which the sexual assaults occurred. She responded, "No." The prosecutor's request to treat Doe as a hostile witness was granted.

Doe then testified that another incident occurred while she was sleeping on the couch. Doe was again evasive and did not want to answer. She thought it was "dumb" and "embarrassing." Doe explained also that she was very shy and did not like to talk. She then refused to answer as to what happened on the couch. She reiterated that the questions were "dumb," that she did not remember "shit," and she said, "What do you expect a kid to remember? Especially things that I went through? Stop talking to me already."

Another sidebar was taken. The trial court admonished Doe not to get angry. The trial court explained for the record that Doe slapped the witness stand and had turned around to face the wall when she was angry. The trial court advised Doe that she just needed to testify for at most two days and then she would be done. Doe told the trial

11

court that she would not return the following day. The trial court advised Doe that if she said she was not coming back, she would not be allowed to leave that night.

The trial court determined that it would recess until the following day to allow Doe to compose herself. Doe refused to calm down. The trial court was forced to remand her to juvenile detention facilities because of her refusal to appear. Doe responded, "Stupid. I fucking hate my life. Motherfucking be getting molested right now than being here. I don't know why I even said anything."

The following day, Doe assured the trial court that she would respond to the questions. Doe was responding to questions so the trial court reversed its order that she was a hostile witness. She testified as set forth in the statement of facts, *ante*.

During cross-examination, Doe denied she ever said prior to trial that the molestations started when she was six years old; she was five. She also never told anyone that the molestations stopped when she was 12 years old. Thereafter, Doe continuously stated that she could not remember what she told anyone prior to trial. She denied that looking at the transcripts of her RCAT interviews would help her recall what she had said. Doe admitted that she was very angry during the RCAT interviews and was yelling at the interviewer. She did not know if she only said that she was molested in the living room and never said anything about the bathroom.

Doe admitted the first time that she said defendant called it a game was at trial. She did not know if her testimony at trial was the first time she said he sodomized her. She continued to insist she did not remember what she told the RCAT interviewer.

12

At the end of Doe's testimony, defendant's counsel moved to strike her testimony, arguing that he did not have an opportunity to effectively cross-examine her. Defense counsel argued that Doe refused to look at transcripts of her prior testimony and she was not truthful about forgetting her prior testimony. The trial court felt that Doe had not changed her testimony. Further, her attitude and credibility were for the trier of fact to determine. The trial court felt that her responses were sufficient. Whether Doe was truthful in saying that the transcripts would not refresh her memory was for the jury to decide. The trial court did not believe defendant was prevented from cross-examining her.

During defendant's Evidence Code section 1118.1 motion, defense counsel argued due process required that all of the counts be dismissed. The victim's failure to articulate the acts in a reasonably detailed manner and her failure to answer questions warranted dismissal. The trial court felt that Doe had calmed down enough the second day to give appropriate testimony. Further, the jury could decide the credibility of Doe.

2. *ANALYSIS*

Cross-examination is " ' "the greatest legal engine ever invented for the discovery of truth" ' [citation] . . . ." (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733 (*Fost*).) Cross-examination is "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." (*Pointer v. Texas* (1965) 380 U.S. 400, 405.) "Because it relates to the fundamental fairness of the proceedings, cross-examination is said to represent an 'absolute right,' not merely a privilege [citations], and denial or undue restriction thereof may be reversible error. [Citation.]" (*Fost*, at p. 733.)

13

"Where a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony on direct." (*Fost*, *supra*, 80 Cal.App.4th at p. 735.) Moreover where a witness "frustrates" cross-examination by declining to answer some or all of the questions, the court may strike all or part of the testimony. (*People v. Price* (1991) 1 Cal.4th 324, 421.) The decision whether to strike the direct examination, or a partial strike of the testimony, of a witness who does not submit to cross-examination is left to the discretion of the trial court. (*People v. Reynolds* (1984) 152 Cal.App.3d 42, 47-48.)

Defendant characterizes Doe's testimony on cross-examination as a refusal to answer questions. However, the People argue nothing in the record supports that Doe's lack of memory was deliberate or feigned to evade answering defense counsel's questions.

"[A] witness with genuine memory loss is considered available for a defendant's cross-examination. [Citation.]" (*People v. Gunder* (2007) 151 Cal.App.4th 412, 419, called into doubt on another point in *People v. Moore* (2011) 51 Cal.4th 386.) "The circumstance of feigned memory loss is not parallel to an entire refusal to testify. The witness feigning memory loss is in fact subject to cross-examination, providing a jury with the opportunity to see the demeanor and assess the credibility of the witness . . . ." (*Gunder*, at p. 420.)

Here, the record supports that Doe was clearly traumatized and emotionally scarred. Most of the times that Doe stated she "did not remember" or "did not know" involved her inability to recall what she said during the first and second RCAT

14

interviews. She stated she was mad when the first interview occurred. She also stated that she was trying to forget everything that had happened to her.

Moreover, she was evasive with both the prosecutor and defense counsel. It was clear she did not want to recall the details of the molestations. The trial court did not abuse its discretion by finding that her statements on cross-examination that she did not remember, or did not know, were truthful statements and not a refusal to respond. Further, even if she was not truthful and was feigning ignorance, the jury clearly could determine her credibility based on her demeanor and actions on the stand. The jury was instructed, "If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject."

There was not a complete or partial refusal by Doe to be subjected to cross-examination that required exclusion of her direct testimony. Further, the jury was well aware of the inconsistencies in Doe's pretrial and trial testimony. Defendant presented the testimony of Deputy Daugherty, who detailed all of the inconsistencies between Doe's pretrial and trial statements. Further, Detective Salisbury, the officer who observed Doe's RCAT interviews, testified as to the inconsistencies between Doe's trial testimony and what she stated during the interviews. While it is true defendant was unable to fully confront her about these inconsistencies, the issues were before the jury and defendant was not completely foreclosed of his rights of confrontation. The trial court did not abuse its discretion by refusing to strike Doe's testimony.

15

B.     FAILURE TO INSTRUCT WITH LESSER INCLUDED OFFENSE OF

UNLAWFUL SEXUAL INTERCOURSE

Defendant contends the trial court erred in not instructing the jury sua sponte on the crime of unlawful sexual intercourse with a minor in violation of section 261.5, subdivision (c) (statutory rape), which he insists is a lesser included offense of the charged offenses of aggravated sexual assault of a child by means of rape in violation of section 269, subdivision (a)(1).

"A court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial. [Citations.] This sua sponte obligation extends to lesser included offenses if the evidence 'raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense. [Citations.]' [Citations.]" (*People v. Lopez* (1998) 19 Cal.4th 282, 287-288.)

A trial court has a "duty to instruct on 'all theories of a lesser included offense which find substantial support in the evidence.' [Citation.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 866-867.)

However, the " 'substantial evidence requirement is not satisfied by " 'any evidence . . . no matter how weak,' " but rather by evidence from which a jury composed of reasonable persons could conclude "that the lesser offense, but not the greater, was committed." [Citation.]' " (*People v. Verdugo* (2010) 50 Cal.4th 263, 293; *People v. Breverman* (1998) 19 Cal.4th 142, 162.) " ' "On appeal, we review independently the

16

question whether the trial court failed to instruct on a lesser included offense." ' " (*Verdugo*, at p. 293.)

Two tests are used to determine whether a lesser offense is necessarily included in the charged offense: the elements test and the accusatory pleading test. "The elements test is satisfied when ' "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." [Citation.]' [Citations.] Stated differently, if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former. [Citations.] [¶] Under the accusatory pleading test, a lesser offense is included within the greater charged offense ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' [Citations.]" (*People v. Lopez*, *supra*, 19 Cal.4th at pp. 288-289.)

Section 261.5, subdivision (c), provides: "Any person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony. . . ." Unlawful sexual intercourse is defined as "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor." (§ 261.5, subd. (a).) Section 269, subdivision (a)(1), provides that any person who rapes a child under 14 years of age and 10 or more years younger than the perpetrator is guilty of aggravated sexual assault of a child. Rape as used in this section, "is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . [¶] . . . [¶] [w]here [the act] is

17

accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate . . . bodily injury . . . [¶] . . . [¶] [or w]here the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat." (§ 261, subds. (a)(2) & (a)(6).)

The People do not dispute defendant's assertion that statutory rape is a lesser included offense of aggravated sexual assault of a child by means of rape. We will accept that concession and need not engage in a lengthy discussion of this issue. The People contend, however, that the court properly refused to instruct the jury on statutory rape because there was no substantial evidence that defendant was guilty only of unlawful sexual intercourse with a minor, and not aggravated sexual assault by means of rape.

As noted, the primary difference between the charged offenses and statutory rape is that the charged offenses require proof of forcible rape, accomplished against the will of the person by means of "force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (§ 261, subd. (a)(2).)

In this case, we agree with the People that there was no evidentiary basis for instructing the jury on statutory rape as a lesser offense of all counts. First, there is "the long-standing presumption that children under age 14 cannot give legal consent to sexual

18

activity." (*People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 11 (*Soto*).)[7] And, when the law " 'implies incapacity to give consent, . . . this implication is *conclusive*. In such case the female is to be regarded as resisting, no matter what the actual state of her mind may be at the time. The law resists for her.' [Citation.]" (*Id.* at p. 248, fn. omitted.)

Additionally, there was not substantial evidence that defendant only had unlawful sexual intercourse with Doe. Doe was only five or six years old when defendant, the only father that she had ever known, first had sexual intercourse with her. "[A]s a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 16, fn. 6.) Here, it was clear that sexual acts were committed under duress. Defendant was left in charge of Doe and had sex with her while taking care of her when V.C. worked. He started having sex with her when she was only five or six years old. Defendant told Doe that it was a game, and she at first had no idea what was happening to her. She also had no idea why she had sex with him. Further, there was also evidence that some force was used. Doe, on one occasion, had blood in her underwear; on another she bled into the toilet. There was no substantial evidence that this was consensual sex with a minor to support the lesser offense instruction.

Even assuming the court erred by failing to instruct the jury on statutory rape as a lesser-included offense, the error was harmless. When a trial court fails to instruct the

---

**7** We will discuss *Soto* in further detail *post*. However, it should be noted that the language of section 261.5, subdivision (c) does not include that the rape must be committed against the will of the child.

jury sua sponte on a lesser included offense, reversal is not required "unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. [Citations.]" (*People v. Breverman*, *supra*, 19 Cal.4th 142, 165; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) A reasonable probability in this context does not mean more likely than not; it means a reasonable chance and not merely a theoretical or abstract possibility. (See *People v. Blakeley* (2000) 23 Cal.4th 82, 94.)

The jury was instructed that in order to find defendant guilty of aggravated assault by means of rape, it must find that Doe did not consent. The jury already concluded by finding defendant guilty of the nine counts that she did not in fact consent to the sexual intercourse. Further, as already noted, the evidence of duress was strong in this case. Doe even stated that she could not hate defendant because she considered him her dad. There is no reasonable probability the jury would have found defendant guilty of the lesser offense even if it had been instructed as contended by defendant.

C.    *GRIFFIN* ERROR

Defendant contends K.A.'s testimony that defendant knew what he had done to her but remained silent in court violated his Fifth Amendment right to remain silent, e.g. *Griffin* error.

1.    *ADDITIONAL FACTUAL BACKGROUND*

During redirect, the prosecutor asked K.A. why she never previously reported that defendant had sex with her, only that he inappropriately touched her. K.A. explained it was difficult to talk about and that her life had been destroyed because of it. The prosecutor asked K.A., "So what made you decide to tell us about it today?" K.A.

20

responded, "Because I just don't like the fact that he knows what he did. It wasn't just me, it was also my sister. And he still wants to sit here and deny everything." There was no objection.

2.    *ANALYSIS*

Defendant has waived appellate review of this issue because he did not object to the alleged instance of *Griffin* error in the trial court. (*People v. Lancaster* (2007) 41 Cal.4th 50, 84 [defendant's failure to object waives *Griffin* error].) Anticipating we would find that he has waived the claim, defendant argues that he received ineffective assistance of counsel due to the failure to object.

In order to show ineffective assistance of counsel, defendant has the burden of establishing that: (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)

In *Griffin*, *supra*, 380 U.S. 609, the Supreme Court of the United States stated, "We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Id.* at p. 615, fn. omitted.)

Defendant concedes there is no California authority supporting his claim that a *witness's* testimony concerning a defendant testifying constitutes *Griffin* error.

21

Defendant cites to two Fifth Circuit Court of Appeals decisions to support his claim. He cites to *U.S. v. Sylvester* (5th Cir.1998) 143 F.3d 923, 929, which held that the "Fifth Amendment prohibits a witness from commenting on a defendant's failure to testify in a criminal trial." He cites to *U.S. v. Rocha* (5th Cir.1990) 916 F.2d 219, 232, which also held that the, "Fifth Amendment prohibits a trial judge, a prosecutor or a witness from commenting upon a defendant's failure to testify in a criminal trial." Lower federal court decisions on federal questions are persuasive authority, but they are not binding on California Courts of Appeal. (*People v. Zapien* (1993) 4 Cal.4th 929, 989.)

Initially, as to defendant's ineffective assistance of counsel claim, reasonably competent counsel would not have raised a *Griffin* error objection to K.A.'s statements. There is no California authority supporting defendant's claim. Trial counsel was not ineffective in failing to make a futile objection.

Moreover, we are not persuaded by the Fifth Circuit Court of Appeals cases relied upon by defendant, and therefore, he cannot show prejudice. In both of these cases, the circuit court cites to *Griffin*, without a pinpoint cite, for authority that a witness's comment can constitute *Griffin* error, but *Griffin* does not stand for that proposition. (*U.S. v. Rocha*, *supra*, 916 F.2d at p. 232; *U.S. v. Sylvester*, *supra*, 143 F.3d at p. 929.) We decline to extend *Griffin* beyond its plain language to include a witness's testimony. There was no *Griffin* error.

D.     EVIDENCE CODE SECTION 1108

Defendant makes three interrelated claims regarding Evidence Code section 1108. First, he claims that K.A.'s testimony was improperly admitted propensity evidence,

which should have been excluded as more prejudicial than probative pursuant to Evidence Code section 352. Moreover, he insists that the admission of propensity evidence under Evidence Code section 1108 violated his rights to equal protection and his due process right to a fair trial. Finally, defendant argues that CALCRIM No. 1191, the pattern instruction for Evidence Code section 1108 evidence, interferes with the presumption of innocence and interfered with his right to be found guilty beyond a reasonable doubt.

### 1. *ADDITIONAL FACTUAL BACKGROUND*

Prior to trial, the prosecutor moved to admit testimony by K.A. that she also had been molested by defendant when she was approximately 13 or 14 years old. The prosecutor made an offer of proof that K.A. would testify defendant touched her breasts, vagina and buttocks. Defendant stated he was objecting on Evidence Code section 352 grounds based on the dissimilar nature of the crimes and remoteness. The trial court responded, "I don't think [Evidence Code section] 352 is going to be sufficient to eliminate—it's clearly [Evidence Code section] 1108. It's right on point. So I'll allow that in."

The jury was instructed with CALCRIM No. 1191 in regards to K.A.'s testimony, as will be discussed in further detail, *post*.

### 2. *ADMISSION OF EVIDENCE CODE SECTION 1108 TESTIMONY*

We first address defendant's claim that K.A.'s testimony was improperly admitted, as its probative value was outweighed by prejudice. Evidence Code section 1108 provides, in relevant part: "(a) In a criminal action in which the defendant is

23

accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by [Evidence Code s]ection 1101, if the evidence is not inadmissible pursuant to [Evidence Code s]ection 352." Evidence Code section 1108 permits the introduction of this evidence as propensity evidence. (*People v. Falsetta* (1999) 21 Cal.4th 903, 911-912 (*Falsetta*).)

The *Falsetta* court determined that Evidence Code section 1108 does not unduly burden a defendant because it does not allow unrestricted admission of a defendant's bad acts, character or reputation, but "is limited to the defendant's *sex offenses*, and it applies only when he is charged with committing *another sex offense*." (*Falsetta*, *supra*, 21 Cal.4th at p. 916.) Further, the admission of the evidence is subject to exclusion under Evidence Code section 352. (*Falsetta*, at pp. 916-917.)

"Evidence Code section 352 gives a [trial] court the discretion to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Nguyen* (2010) 184 Cal.App.4th 1096, 1116.) Factors that a trial court should consider when deciding whether to allow the presentation of prior sexual offense evidence are: "(1) whether the propensity evidence has probative value, e.g., whether the uncharged conduct is similar enough to the charged behavior to tend to show defendant did in fact commit the charged offense; (2) whether the propensity evidence is stronger and more inflammatory than evidence of the defendant's charged acts; (3) whether the uncharged conduct is remote or stale; (4) whether the propensity evidence is likely to confuse or

24

distract the jurors from their main inquiry, e.g., whether the jury might be tempted to punish the defendant for his uncharged, unpunished conduct; and (5) whether admission of the propensity evidence will require an undue consumption of time. [Citation.]" (*Id.* at p. 1117.)

"This court reviews the admissibility of evidence of prior sex offenses under an abuse of discretion standard. [Citation.] A trial court abuses its discretion when its ruling 'falls outside the bounds of reason.' [Citation.]" (*People v. Wesson* (2006) 138 Cal.App.4th 959, 969.) The trial court need not detail the weighing process on the record to comply with the requirements of Evidence Code section 352. (*People v. Williams* (1997) 16 Cal.4th 153, 213-214.)

Here, the prosecutor sought to admit evidence that K.A., Doe's sister, had also been molested by defendant. The offenses were not remote as they were committed around the same time that defendant was molesting Doe, and certainly were not more inflammatory than the charged offenses. They did not involve an undue consumption of time or confuse the issue. The evidence was properly admitted pursuant to Evidence Code section 1108.

Additionally, any conceivable error in admitting K.A.'s testimony was harmless. The erroneous admission of prior uncharged offenses is prejudicial if it is reasonably probable a result more favorable to defendant would have been reached if the evidence had not been admitted. (*Watson*, *supra*, 46 Cal.2d at p. 836; *People v. Jandres* (2014) 226 Cal.App.4th 340, 357 [applying the *Watson* standard to an Evidence Code section 1108 error].)

25

The jury was instructed that it could not find defendant guilty solely on the basis of the uncharged offenses. Further, the evidence that Doe was molested by defendant was strong. Doe presented compelling testimony that defendant repeatedly molested her. This was corroborated by the discovery of her bloody underwear and that she also bled into the toilet. When confronted about it, she had no response. V.C., who lived in the house with Doe and defendant, had suspected the molestation and even stopped working nights in order to protect her. Based on the foregoing, even without K.A.'s testimony regarding the uncharged offenses, it is not reasonably probable that a more favorable verdict for defendant would have been reached.

### 3. *CONSTITUTIONAL VIOLATION*

Defendant further contends that consideration of the uncharged offenses as propensity evidence under Evidence Code section 1108 deprived him of equal protection and his due process right to a fair trial. While he acknowledges that this question has long been settled in California, he nevertheless raises it in order to preserve it for federal review. Bound by our Supreme Court's rulings, and finding it unnecessary to engage in a lengthy discussion on this issue, we reject his argument. (*Falsetta*, *supra*, 21 Cal.4th at pp. 915, 918 [rejecting due process challenge to [Evidence Code] section 1108 and noting with approval rejection of equal protection challenge in *People v. Fitch* (1997) 55 Cal.App.4th 172, 184-185]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

### 4.   *CALCRIM NO. 1191*

Defendant further argues that the trial court erred by instructing the jury with CALCRIM No. 1191,[8] which addresses Evidence Code section 1108 evidence, asserting that the instruction is unconstitutional.  He concedes that our Supreme Court has held the CALJIC predecessor instruction (No. 2.50.01) is constitutional, but raises the constitutionality argument to preserve the point for federal court review.  (*People v. Reliford* (2003) 29 Cal.4th 1007, 1011-1016 [CALJIC No. 2.50.01 is a correct statement of the law].)

In *People v. Reliford*, *supra*, 29 Cal.4th 1007, the court considered an instruction similar to CALCRIM No. 1191, and concluded it (1) properly reflected the law set forth in Evidence Code section 1108; (2) permitted the factfinder to consider prior sex offenses to prove criminal disposition; (3) allowed for permissible and appropriate inferences; and (4) did not violate due process of law.  (*Reliford*, at pp. 1011-1016; see also *People v. Loy* (2011) 52 Cal.4th 46, 71-76 [approving *Reliford*].)  We are bound by the decisions of our Supreme Court.  (*Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at p. 455.)  Accordingly, we reject defendant's contention.

---

[8] In this case, the jury was instructed, in pertinent part, that the evidence of the prior offenses only had to be proven by a "preponderance of the evidence" and "[i]f you decide that the defendant committed the uncharged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the defendant was likely to commit and did commit Counts 1 through 9 as charged here."  The jury was further instructed, "[t]he People still must prove each charge beyond a reasonable doubt."

E.     <u>INSTRUCTIONS ON CONSENT</u>

Defendant contends that the trial court erred by omitting from the jury instructions on aggravated sexual assault of a child by means of rape that his reasonable, good faith belief in Doe's consent was a defense to the crimes. Such error violated his federal constitutional rights to a fair trial and due process.

1.     *ADDITIONAL FACTUAL BACKGROUND*

During discussion of the instructions, there was no objection by either party to the standard instructions to be given for aggravated sexual assault for rape. These instructions included that the People had to prove the acts were accomplished against the will of Doe and that the "woman did not consent to the intercourse," and it instructed the jury that "[t]o consent, a woman must act freely and voluntarily and know the nature of the act." It did not include language that a defense to the crime was that a defendant could have a reasonable, good faith belief that the victim consented even if there was no actual consent.

2.     *ANALYSIS*

Defendant contends for the first time on appeal he was entitled to an instruction to the jury that he had a reasonable, good faith belief that Doe consented to the acts. The People contend that the California Supreme Court made it clear in *Soto*, *supra*, 51 Cal.4th at pages 233 and 248, that no child under the age of 14 years can consent to any lewd act under any circumstance.

28

The offense of aggravated sexual assault on a child under the age of 14 years by means of rape requires proof that it was committed against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. (§§ 261, subd. (a), 269, subd. (a).) However, in *Soto*, the crime committed (forcible lewd act) did not require that it be committed against the will of the victim. (*Soto*, *supra*, 51 Cal.4th at p. 237.) The aggravated sexual assault by means of rape required that the acts be committed against the will of the victim. We will assume, without deciding, that the trial court did err by excluding the language from the instruction that a reasonable, good faith belief of consent was a defense to the charges. As we will discuss, the error was harmless.

"The trial court has a sua sponte duty to instruct on defenses where there is substantial evidence to support the instruction. [Citation.]" (*People v. Felix* (2001) 92 Cal.App.4th 905, 911.) Under *People v. Mayberry* (1975) 15 Cal.3d 143 (*Mayberry*), a defendant charged with a forcible sex offense is not guilty if he or she had a mistaken but good faith and reasonable belief that the victim consented. (*Id.* at pp. 153-158.) "If a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented . . . to engage in sexual intercourse, it is apparent he does not possess the wrongful intent that is a prerequisite . . . to a conviction of . . . rape by means of force or threat [citation]." (*Id.* at p. 155.)

"[T]he *Mayberry* defense 'has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse. In order to satisfy

29

this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent. [¶] In addition, the defendant must satisfy the objective component, which asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a *Mayberry* instruction.' [Citation.]" (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1148.)

The test for prejudice from the court's failure to instruct the jury on a defense is not entirely clear. (See, e.g., *People v. Gonzales* (1999) 74 Cal.App.4th 382, 391, disapproved on other grounds in *People v. Anderson* (2011) 51 Cal.4th 989 ["[w]e need not determine whether the applicable standard of prejudice is whether the error in failing to instruct regarding the defense of accident was harmless beyond a reasonable doubt or the less stringent standard articulated in . . . *Watson*[, *supra*,] 46 Cal.2d [at p.] 836"]; *People v. Rogers*, *supra*, 39 Cal.4th at p. 868, fn. 16 [an exception to the *Watson* standard may exist "when the error deprives the defendant of the federal due process right to present a complete defense"]; *People v. Russell* (2006) 144 Cal.App.4th 1415, 1431 ["[e]rror in failing to instruct on the mistake-of-fact defense is subject to" *Watson* test].) In an abundance of caution, we apply the more stringent "beyond a reasonable doubt" standard of *Chapman v. California* (1967) 386 U.S. 18, 24 especially in light of defendant's argument that his federal constitutional rights were violated.

Here, defendant did not take the stand; thus, he did not testify that he subjectively believed Doe consented. Defendant's defense was that he never touched Doe. There simply was no evidence to support an instruction defendant was claiming he had a reasonable, good faith belief that Doe consented to the sexual assaults. As such, he was not entitled to the *Mayberry* instruction, even if it was applicable.

Moreover, there was no evidence of a mistaken belief in consent that society would tolerate as reasonable under the circumstances. Defendant was the only father that Doe ever knew. This gave him parental control over Doe. She was left in his care while V.C. went to work. Doe was either five or six years old when the abuse began and she testified she told no one because she did not understand what was happening to her. Based on the relationship between Doe and defendant, and Doe's age when these acts were committed, even if the jury was instructed as averred by defendant, it is clear beyond a reasonable doubt that it would have rejected that such a reasonable belief in consent could exist.

Moreover, based on the instructions, the jury had to conclude defendant used force or duress in committing the acts, which is further evidence the jury would reject that defendant believed Doe consented to the acts. As argued by the prosecutor, Doe did not consent because she did not know what was happening, and defendant forced her by telling her it was a game. Just like a parent can get a child to perform a task because the parent occupies the role of being in charge, defendant could get Doe to do these acts because of his parental role. The evidence of duress contradicted any claim of consent by defendant.

31

We are convinced beyond a reasonable doubt that, even if the jury had been given a *Mayberry* instruction, it would have found that defendant did not actually entertain an objectively reasonable belief in consent. As such, any conceivable error was harmless.

F.        PROSECUTORIAL MISCONDUCT

Defendant contends the prosecutor committed misconduct under the state and federal constitutions when he called defendant a "piece of trash" and "a monster" during closing argument.

During the prosecutor's argument, he told the jurors, "I ask you to hold him accountable and look at him and tell him, you're a horrible piece of trash, you're not even human." The prosecutor in his closing argument discussed that defense counsel was claiming Doe and K.A. were lying. He stated, "There's no way this girl is lying to you. She had absolutely no motive. Did she want that piece of trash out of her house, out of her life? Absolutely. Absolutely. That man right there, that man sitting there, he's a monster. That man likes to have sex with children. Of course [Doe] doesn't want to be around him. Of course she wants him out of her life. But she's not lying. She has no motive to lie to you."

1.        *STANDARD OF REVIEW*

" ' "The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is

prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' [Citation.]" [Citation.]' [Citation.]" (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 241 [Fourth Dist., Div. Two].)

### 2.   *FORFEITURE*

Initially, the People argue defendant failed to make a timely objection to the comments and has therefore forfeited his claim.  " ' "[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.  [Citation.]" ' [Citations.]" (*People v. Pearson* (2013) 56 Cal.4th 393, 426.)  Defendant admits that his trial counsel did not object to the above-referenced remarks, but insists that any admonition to the jury would not have cured the error.  Moreover, defendant has claimed that if we find he has forfeited the claim, he received ineffective assistance of counsel. We will address defendant's claim.

### 3.   *MISCONDUCT*

" 'It is settled that a prosecutor is given wide latitude during argument.' " (*People v. Wharton* (1991) 53 Cal.3d 522, 567-568.)  "Closing argument may be vigorous and may include opprobrious epithets when they are reasonably warranted by the evidence." (*People v. Sandoval* (1992) 4 Cal.4th 155, 180, declined to extend on other grounds in *People v. Kopatz* (2015) 60 Cal.4th 62.)  The use of derogatory epithets is appropriate as long as they " 'are not inflammatory and principally aimed at arousing the passion or prejudice of the jury.' " (*People v. Tully* (2012) 54 Cal.4th 952, 1021.)

For example, in *People v. Hawkins* (1995) 10 Cal.4th 920, abrogated on other grounds in *People v. Lasko* (2000) 23 Cal.4th 101, the court found there was no misconduct when the prosecutor referred to the defendant as " 'coiled like a snake.' " (*Hawkins*, at p. 961.)  In *People v. McDermott* (2002) 28 Cal.4th 946, the court found no misconduct when the defendant complained that the prosecutor committed misconduct by comparing him to "a germ, a mad dog, and a snake." (*Id.* at p. 1003)  Finally, in *People v. Tully*, *supra*, 54 Cal.4th 952, the Supreme Court found no misconduct where a prosecutor described a defendant as " 'a despicable excuse for a man' " during the guilt phase of a trial.  (*Id.* at p. 1021.)

Here, the prosecutor briefly described defendant as being a monster and a piece of trash to emphasize that the crimes defendant committed against Doe were significant and deplorable.  Such brief comments in a lengthy argument do not amount to prosecutorial misconduct.

Moreover, even if we were to conclude that such comments amounted to misconduct, they did not violate defendant's federal constitutional rights because it was not a pattern of conduct so egregious that it infected the trial with such unfairness as to make the conviction a denial of due process (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214) and did not violate his state constitutional rights as it is not reasonably probable that a result more favorable to defendant would have occurred had the prosecutor refrained from making these comments.  (*People v. Milner* (1988) 45 Cal.3d 227, 245.) These brief references did not infect the trial with such unfairness so as to make the conviction a denial of due process and did not impact his state constitutional rights.

Further, as previously discussed, the evidence substantially supported defendant's convictions as Doe's testimony was convincing and was corroborated by other evidence.

### G. RESTITUTION FINE

Defendant contends for the first time on appeal that in order for the trial court to have imposed a restitution fine, which he claims is "above the statutory minimum," he must have been afforded a jury trial on the facts to be considered by the trial court in the exercise of its discretion to impose the fine. Accordingly, since the trial court only relied upon judicially determined facts, the imposed $10,000 fine assessed pursuant to section 1202.4, subdivision (b)(1) violates his Sixth and Fourteenth Amendment rights.

In assessing the restitution fine pursuant to section 1202.4, subdivision (b)(1), the court found, "I will however assess a restitution fine in the amount of $10,000. That amount I think is inadequate for what the defendant has done. The cost to the state and the cost to the victim is far in excess of that. And I think he has the ability to pay it however long it takes. He will be given jobs in the Department of Corrections, and a portion of that salary that he earns will be used to pay off that on a gradual basis." A parole revocation fine in the same amount under section 1202.45 was also imposed and stayed.

Section 1202.4, subdivision (b)(1), at all pertinent times has provided: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." The statute provides a range from a minimum amount that has changed over time to a maximum of $10,000. (§ 1202.4, subd.

35

(b)(1).)  At all pertinent times, the statute has provided that, in setting the amount in excess of the minimum, "the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the crime, and the number of victims involved in the crime. . . .  Express findings by the court as to the factors bearing on the amount of the fine shall not be required.  A separate hearing for the fine shall not be required."  (§ 1202.4, subd. (d); Stats. 2009, ch. 454, § 1; Stats. 2011, ch. 45, § 1, eff. July 1, 2011.)

Defendant primarily relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466 and *Southern Union Co. v. United States* (2012) 567 U.S. ___ [132 S.Ct. 2344] (*Southern Union*) to support his claim.  *Apprendi* held that, " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' "  (*Apprendi*, at p. 490.)  The statutory maximum for *Apprendi* purposes is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  (*Blakely v. Washington* (2004) 542 U.S. 296, 303, italics omitted.)

In *Southern* Union, the court found that *Apprendi* applies to the imposition of criminal fines.  The statutory fine in *Southern Union* was a daily fine of $50,000 for each day the defendant violated a statute.  The trial court there made a specific finding as to the number of days the defendant violated the statute.  The United States Supreme Court

36

held this violated *Apprendi*. (*Southern Union*, *supra*, 567 U.S. at pp. __ [132 S.Ct. at pp. 2352, 2348-2349, 2357].)

In *People v. Kramis* (2012) 209 Cal.App.4th 346, the appellate court addressed the identical issue raised by defendant here: whether a jury trial was required to impose a $10,000 restitution fine under section 1202.4, subdivision (b)(1). (*Kramis*, at p. 349.) The appellate court evaluated *Southern Union*, *Blakely*, and *Apprendi* and found it did not apply where, as in this case, "the trial court exercises its discretion within a *statutory range*." (*Kramis*, at pp. 351-352, italics added.)

We find the reasoning in *Kramis* to be persuasive. Defendant was not entitled to a jury trial on the section 1202.4, subdivision (b)(1) fine, as it was imposed within the statutory range based on the nine counts of aggravated sexual assault.

## DISPOSITION

We affirm the judgment.

CERTIFIED FOR PARTIAL PUBLICATION

MILLER _____

J.

We concur:

HOLLENHORST _____

Acting P. J.

KING _____

J.